IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TERESA BLOODMAN                                                    PLAINTIFF

v.                              CASE NO. 4:18-cv-00282-KGB

ARKANSAS SUPREME COURT COMMITTEE
ON PROFESSIONAL CONDUCT (the "Committee");
ROBERT STARK LIGON, Executive Director,
Arkansas Supreme Court Committee on
Professional Conduct; JAMES DUNHAM, as
Chair of the Committee; MICHAEL BOYD; T. BENTON
SMITH; TONYA PATRICK[1]; LISA C. BALLARD[2];
KAROLYN JONES; MARK L. MARTIN[3]; DANYELLE
WALKER; and, TANYA R. OWEN[4], as Members of
Panel A of the Arkansas Supreme Court Committee on
Professional Conduct; the HONORABLE KIM SMITH, in
his capacity as Special Judge; the HONORABLE JOHN
KEMP, as Chief Justice of the Supreme Court of Arkansas;
The HONORABLE ROBIN F. WYNNE[5]; the HONORABLE
COURTNEY HUDSON GOODSON; the HONORABLE
JOSEPHINE L. HART; the HONORABLE SHAWN A.
WOMACK; the HONORABLE KAREN BAKER; the
HONORABLE RHONDA K. WOOD[6], as Associate
Justices of the Supreme Court of Arkansas                          DEFENDANTS

---

[1] Defendant Tonya Patrick was a member of Panel C on March 21, 2016, but substituted for a Panel A member who was not present.

[2] Defendant Lisa C. Ballard was not a member of Panel A at the time the Interim Order of Suspension was imposed on March 21, 2016. Ballard was appointed effective January 1, 2018.

[3] Defendant Mark L. Martin was not a member of Panel A at the time the Interim Order of Suspension was imposed on March 21, 2016. Martin was appointed effective January 1, 2017.

[4] Defendant Tanya R. Owen was not a member of Panel A at the time the Interim Order of Suspension was imposed on March 21, 2016. Own was appointed effective January 1, 2018.

[5] Defendant Honorable Robin F. Wynne recused as an Associate Justice in the Arkansas Supreme Court Disbarment case D-16-301 on May 27, 2016, prior to Plaintiff filing her Motion to Dismiss and Response to the Disbarment Petition.

[6] Defendant Honorable Rhonda K. Wood recused as an Associate Justice in the Arkansas Supreme Court Disbarment case D-16-301 on April 11, 2016, prior to Plaintiff filing her Motion to Dismiss and Response to the Disbarment Petition.

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Come now Defendants, Arkansas Supreme Court Committee on Professional Conduct (the "Committee"); Robert Stark Ligon, Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, in his official and individual capacity; James Dunham, as Chair of the Committee; Michael Boyd, T. Benton Smith, Tonya Patrick, Lisa C. Ballard, Karolyn Jones, Mark L. Martin, Danyelle Walker, and Tanya R. Owen, as members of Panel A of the Committee; the Honorable Kim Smith, in his capacity as Special Judge; the Honorable John Kemp, as Chief Justice of the Supreme Court of Arkansas; the Honorable Robin F. Wynne, the Honorable Courtney Hudson Goodson, the Honorable Josephine L. Hart, the Honorable Shawn A. Womack, the Honorable Karen Baker, the Honorable Rhonda K. Wood, as Associate Justices of the Supreme Court of Arkansas; (hereinafter collectively referred to as "Defendants"), by and through their attorneys, Attorney General Leslie Rutledge, Deputy Attorney General Monty V. Baugh, and Assistant Attorney General William C. Bird III, and for their Brief in Support of Defendants' Motion to Dismiss, state the following:

## STANDARD OF REVIEW

When ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court accepts the allegations contained in the complaint as true, and reasonable inferences from the complaint are drawn in favor of the nonmoving party. Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). A motion to dismiss is properly granted when, based on the plaintiff's

own allegations, it is plain that the defendant is entitled to judgment as a matter of law.  "Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young, 244 F.3d at 627.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.  (Quoting Twombly, 550 U.S. at 557).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*. (citing Twombly, 550 U.S. at 570).  This pleading standard is satisfied if the complaint's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing Twombly, 550 U.S. at 556).  "A gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." Christiansen v. West Branch Community Sch. Dist., 674 F.3d 927, 934 (8th Cir. 2012) (citing *Twombly*, 550 U.S. at 555-57).  "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

Defendants will show the Court herein that Plaintiff has not stated any facts in her Complaint to support her claims for relief against these Defendants.

## STATEMENT OF FACTS

Plaintiff, Teresa Bloodman, is an attorney who brings this Complaint against the Defendants for alleged violations of the Plaintiff's rights under the United States Constitution pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 and the Fifth and Fourteenth Amendments to the United States Constitution related to the interim suspension of her Arkansas attorney's license. Plaintiff has sued Defendants in their official and individual capacities and seeks only injunctive relief. Specifically and in relevant part, Plaintiff requests this Court invalidate the Order of Interim Suspension dated March 21, 2016, and further requests the Court declare Sections 16 and 17 of the Procedures of the Arkansas Supreme Court Regulating the Professional Conduct of Attorneys at Law ("Arkansas Procedures") to be unconstitutional (Complaint, pp. 36-37, Prayer for Relief).

On March 18, 2016, Panel A of the Committee considered 10 cases against the Plaintiff.[7] After full consideration of the 10 cases, including consideration of responsive affidavits filed by the Plaintiff, Panel A issued its Findings and Order on

---

[7] The underlying cases giving rise to the Petition for Disbarment are CPC No. 2014-053, CPC No. 2014-067, CPC No. 2015-013, CPC No. 2015-016, CPC No. 2015-020, CPC No. 2015-029, CPC No. 2015-045, CPC No. 2015-088, CPC No. 2015-092, and CPC No. 2015-108. Panel A dismissed CPC No. 2015-045 but unanimously voted to refer Plaintiff to disbarment proceedings concerning the remaining nine cases. Complaint, Ex. 1.

March 21, 2016, whereby it voted unanimously to refer Plaintiff to disbarment proceedings on nine of the cases (excluding CPC No. 2015-045, which the Panel dismissed) and directed Defendant Ligon to file a Petition for Disbarment if Plaintiff failed to surrender her Arkansas law license. (Complaint, Ex. 1). The Order of Interim Suspension contemporaneously was entered by the Committee on March 21, 2016. (Complaint, Ex. 2).  The primary contention of Plaintiff's Complaint is that the Arkansas Procedures and the Defendants denied her due process because she was not afforded a hearing prior to imposition of the interim suspension. (Complaint ¶¶ 10, 92-115).

Pursuant to the Committee's Findings and Order, Defendant Ligon filed a Petition for Disbarment (Supreme Court of Arkansas, D-16-301) against the Plaintiff on April 1, 2016.[8] Following the Committee's denial of Plaintiff's motion to set aside the Order of Interim Suspension, Plaintiff filed a Petition for Writ of Certiorari with the Supreme Court of Arkansas (CV-16-434) on May 17, 2016, requesting the Court vacate the Order of Interim Suspension. (Complaint ¶ 35). The Supreme Court denied Plaintiff's Petition for Writ of Certiorari by Order dated September 15, 2016 (Complaint ¶ 64, Ex. 3) and subsequently denied Plaintiff's Motion for Reconsideration by Order dated October 27, 2016 (Complaint ¶ 66, Ex.

---

[8] An Amended Petition was filed on October 14, 2016, a Second Amended Petition was filed on May 10, 2017, a Third Amended Petition was filed on August 21, 2017, and a Fourth Amended Petition was filed on September 29, 2017. In total, the Amended Petitions allege 176 separate violations of the Arkansas Rules of Professional Conduct.

4).[9] Plaintiff asserts that the Defendant Justices "conduct of violating Attorney Bloodman's right to procedural due process by not granting the petition for writ to set aside the Committee's order suspending the attorneys' law license is volatile[sic] of the U.S. Constitutions." (Complaint ¶ 87).

In addition to the allegations set forth above, Plaintiff further alleges: that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1985(3) for the "purpose of depriving directly or indirectly, Attorney Bloodman of equal protection under the law to prevent Attorney Bloodman from practicing law in the State of Arkansas." (Complaint ¶¶ 196-206); that Defendants violated Plaintiff's equal protection rights "in that she has been afforded less favorable terms and conditions of her employment as a state licensed attorney on the basis of her race (Complaint ¶¶ 116-195; and that the Arkansas Procedures "breeds conflict of interest" between the Executive Director of the Office of Professional Conduct and the Arkansas Supreme Court justices, denying attorneys the right to "fair and impartial relief." (Complaint ¶¶ 221-229).

Defendants move to dismiss the Complaint on the grounds set forth below.

## ARGUMENT

### I.    Sovereign Immunity Bars Suit Against All Defendants

The United States Constitution, including the Eleventh Amendment, prohibits any suit in federal court against a state or a state agency unless the state

---

[9] Though Plaintiff fails to include this fact in her Complaint, Plaintiff also filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on June 15, 2017. *See* Docket, CV-16-434.

has consented to suit or Congress has unambiguously abrogated the state's immunity. See Alden v. Maine, 527 U.S. 706 (1999). In addition, neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989). In Will, the United States Supreme Court reasoned that a state official is in effect acting on behalf of the state and, therefore, is immune from liability under the Eleventh Amendment. Id. at 66. The Court explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . As such, it is not different from a suit against the state itself." Id. at 71. See also Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).

Sovereign immunity deprives federal courts of jurisdiction over suits against states and their agencies, boards, commissions and other "alter egos" of the state, unless the state has waived its immunity or Congress has abrogated that immunity pursuant to a valid exercise of Congressional power. See Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Even if the state is not named as a defendant, if a judgment for the plaintiff will operate to control the action of the state or subject it to liability, the suit must be treated as one against the state. Short v. Westark Cmty. Coll., 347 Ark. 497, 505, 65 S.W.3d 440 (2002). The State of Arkansas and its agencies and officials have not consented to suit in federal court, see Burk v. Beene, 948 F.2d 489,

492-93 (8th Cir. 1991), and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. Will, 491 U.S. at 66-67.

Here, all named Defendants are, by law, agencies and officials of the State of Arkansas. Plaintiff seeks injunctive relief which, if granted, would operate to control the action of the state. Consequently, this suit is an action against the State of Arkansas that plainly is barred by sovereign immunity, and therefore, should be dismissed with prejudice.

## II.   Absolute Immunity Bars Suit Against All Defendants

Any claims against the Defendants for performing their duties on behalf of the Arkansas Supreme Court are barred by absolute immunity. The Supreme Court has adopted a "functional" approach to questions of immunity. Harlow v. Fitzgerald, 457 U.S. 800, 810 (1982). "Absolute immunity flows not from rank or title or 'location within the Government' but from the nature of the responsibilities of the individual official." Cleavinger v. Saxner, 474 U.S. 193, 201 (1985) (quoting Butz v. Economou, 438 U.S. 478, 511 (1978)). The Supreme Court recognizes that there is a "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Butz, 438 U.S. at 506.

Defendant Ligon is the Executive Director of the Office of Professional Conduct for the Supreme Court of Arkansas. The Defendant Committee members, including the Committee Chair and the Panel A members are appointed by the Supreme Court. The purpose of the Committee is to regulate "the professional

conduct of attorneys at law" licensed in the State of Arkansas. Arkansas Procedures, Section 1. The Executive Director assists the Committee in fulfilling this purpose and serves at the pleasure of the Arkansas Supreme Court. Arkansas Procedures, Section 5(A). "It **shall be** the duty of the Office of Professional Conduct to receive and investigate **all** complaints against any member of the Bar." Arkansas Procedures, Section 5(C) (emphasis added). Section 3(D) also provides that the "Executive Director and employees and agents of the Committee are absolutely immune from suit or action for their activities in discharge of their duties hereunder to the full extent of judicial immunity in Arkansas." The source of power to establish the Committee on Professional Conduct is in Amendment 28 to the Arkansas Constitution, which provides: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." See Davenport v. Lee, 348 Ark. 148; 72 S.W.3d 85 (2002); see also Sexton v. Ark. Supreme Ct. Comm. On Profess. Conduct, 299 Ark. 439, 445; 774 S.W.2d 114 (1989). Therefore, the Committee is, in effect, an arm of the Arkansas Supreme Court, and is entitled to absolute immunity.

Plaintiff alleges that Defendants' actions during the March 18, 2016, Panel A meeting, specifically the imposition of the interim suspension, violated Plaintiff's rights. Such an allegation as to the Defendant Committee members is barred by absolute immunity. See Myers v. Morris, 810 F.2d 1437 (8th Cir. 1987) (nonjudicial persons performing quasi- judicial functions "intimately related to the judicial process" are entitled to absolute immunity for claims arising from the performance

of assigned tasks). The Arkansas Supreme Court has bestowed absolute immunity upon the Defendant Committee members for the discharge of their duties because it is "essential for the conduct of public business" that these Defendants be protected by absolute immunity in the performance of their responsibilities.

The Defendant Justices likewise are entitled to absolute immunity.  Judges who are sued under § 1983 are immune from liability for damages for "judicial acts" they perform, as long as they do not act in "absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-7 reh'g denied, 436 U.S. 951 (1978). In addition, in Waller v. Wilson, 2007 WL 4510323 (W.D.Ark.), the court held, "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages...judges performing judicial functions enjoy absolute immunity from [Section 1983 liability]." In this case, Plaintiff's allegations against the Defendant Justices are that the "Arkansas Supreme Court justices' conduct of violating Attorney Bloodman's right of procedural due process by not granting the petition for writ to set aside the Committee's order suspending the attorneys' law license is volatile[sic] of the U.S. Constitution." (Complaint ¶ 87). Simply put, Plaintiff disagrees with the decision of the Supreme Court and is attempting to obtain "appellate" review of that decision with this Court. Because the allegations concern only the discretionary performance of judicial functions, the Defendant Justices are entitled to absolute immunity and the claims against them should be dismissed. Though Plaintiff fails to include this fact in her Complaint, Plaintiff also filed a Petition for Writ of Certiorari with the

United States Supreme Court, which was denied on June 15, 2017. *See* Docket, CV-16-434.

### III.   Qualified Immunity Bars Suit Against All Defendants

Although she has pled no facts which would give rise to individual liability, Plaintiff nevertheless asserts that "each individual defendant…is sued in his official *and individual* capacity." (Complaint ¶ 12).   Plaintiff's claims against Defendants in their individual capacities are barred by qualified immunity. Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). A court considers whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction. Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1013-14 (8th Cir. 2013).   A right is clearly established when the contours of the right are sufficiently clear so that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034 (1987).

According to the Complaint, Plaintiff alleges that Defendants denied her due process by failing to permit her to participate in a public hearing prior to imposing an interim suspension of her attorneys' license pending the outcome of the disbarment proceeding. (*See* Complaint ¶ 10).  Plaintiff has no established right to such a pre-suspension hearing.  Arkansas courts repeatedly have held that the practice of law is a privilege, not a right.  See Ligon v. Newman, 365 Ark. 510, 231 S.W.3d 662 (2006).  In Stilley v. Supreme Court Comm. on Prof'l Conduct, 370 Ark. 294, 304–05, 259 S.W.3d 395, 401–02 (2007), the Arkansas Supreme Court affirmed the Committee Panel's 6-month suspension of an attorney license and found that an attorney's procedural due process rights were not violated where he: 1) received notice of the complaint and charges against him, 2) was notified of the Panel's decision, 3) requested and received a public hearing, 4) attended the hearing, and 5) was allowed to present evidence on his behalf.  Here, Plaintiff Bloodman makes no allegation that any of these procedural rights were withheld, and in fact, this very lawsuit was filed during the pendency of Plaintiff's public hearing.

Plaintiff erroneously cites to Williams v. Martin ex rel. State, 2014 Ark. 210 (2014), for the proposition that due process demands the right to a pre-suspension hearing. (Complaint ¶ 103). In fact, the Court in Williams held that immediate suspension of an attorney license for failure to pay annual dues, "without advance notice and without affording her any pre-suspension opportunity to be heard before the suspension took effect," constituted a denial of due process. Here, the Complaint clearly establishes that Plaintiff had both advance notice and the opportunity to be

heard prior to the suspension taking effect. (*See* Complaint, Ex. 1, ¶ 4 ["The Supplemental Affidavit of Respondent filed March 4, 2016, in four cases, along with the response by the Office of Professional Conduct, was considered. Panel A finds there was no 'selective or discriminatory prosecution' of Respondent by either the Office of Professional Conduct or Director Ligon regarding these cases."]).

Plaintiff had no clearly established right to a pre-suspension hearing under the law of this Circuit, and consequently, Defendants are entitled to qualified immunity as to the individual capacity claims against them.

## IV.   Plaintiff's Complaint Is Barred By The <u>Rooker-Feldman</u> Doctrine.

This Court lacks subject matter jurisdiction over Plaintiff's claims under the <u>Rooker-Feldman</u> doctrine. It is clear that the object of this suit is to obtain federal district court "appellate" review of both the decision of the Committee to temporarily suspend the attorney license of the Plaintiff and the Supreme Court's denial of Plaintiff's Petition for Writ to set aside the interim suspension order. Under the <u>Rooker-Feldman</u> doctrine, federal district courts lack subject matter jurisdiction to hear such attempted appeals.

"The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." <u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492 (8th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1183 (2001) (citing <u>District of Columbia Court of Appeals v. Feldman,</u> 460 U.S. 462, 476 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923)). Federal district courts are prohibited from exercising

jurisdiction over appeals from state court decisions and general federal law claims that are "inextricably intertwined" with specific claims already adjudicated in state court. Lemonds, 222 F.3d at 492-93. A general federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." Id. at 493 (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)). If the federal court can only provide relief by determining that the state court was wrong, it is, in effect, an appeal of the state court judgment that is prohibited by the Rooker-Feldman doctrine. Lemonds, 222 F.3d at 492. Put another way, a claim is barred by the Rooker-Feldman doctrine "if the requested federal relief would void the state court's judgment or amount to basically a reversal of the state court's holding." Ace Constr. v. City of St. Louis, 263 F.3d 831, 833 (8th Cir. 2001) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, (1987) (Marshall, J., concurring)).

The Rooker-Feldman doctrine applies to attempted appeals of both "final" state court orders and state court orders that are "interlocutory" or otherwise not "final." See In Re Goetzman, 91 F.3d 1173 (8th Cir. 1996), cert. denied, 117 S.Ct. 612 (1996). "Application of the Rooker-Feldman doctrine does not depend on a final judgment on the merits of an issue . . . nor is there a procedural due process exception to the doctrine. If the state trial court erred in the extent it addressed the issue the [plaintiffs] are now pressing, relief was available in the appellate courts of [the state]. None being forthcoming, the plaintiffs cannot now bring an action in

federal court which would effectively reverse the state court decision or void its ruling." <u>Goetzman</u>, 91 F.3d at 1178 (internal citations omitted)).

While the Committee's decision to interimly suspend Plaintiff is not a judgment of a state trial court, the <u>Rooker-Feldman</u> doctrine nonetheless applies because the Committee's action in suspending Plaintiff was "fundamentally judicial in nature." <u>See Partin v. Arkansas State Bd. of Law Exam'rs</u>, 863 F.Supp. 924, 926 (E.D. Ark. 1994) (citing <u>Thomas v. Kadish</u>, 748 F.2d 276, 281 (5th Cir. 1984)). In <u>Partin</u> the district court noted, correctly, that <u>Rooker-Feldman</u> applies to attempted appeals to federal district court of state agency decisions when the agency exercised "authority on behalf of the Supreme Court pursuant to that Court's rules, standards, and regulations." <u>Id.  See also Middlesex County Ethics Comm. v. Garden State Board Ass'n</u>, 457 U.S. 423, 433-34 (1982).

In <u>Mosby v. Ligon</u>, 418 F.3d 927 (8th Cir. 2005), the Eighth Circuit affirmed the district court's determination that the <u>Rooker-Feldman</u> doctrine (and the <u>Younger</u> abstention doctrine) barred plaintiff's suit concerning disciplinary actions taken against her by the Committee and Supreme Court.  Like the instant case, the plaintiff in <u>Mosby</u> challenged the Arkansas procedures both facially and as applied to her.  The Court specifically held:

> [W]e agree with the district court that it lacked subject matter jurisdiction over Mosby's claims. That portion of her complaint that seeks a declaration concerning the Committee's disciplinary proceedings against her constitutes a challenge to the result of a state judicial proceeding, and the <u>Rooker–Feldman</u> doctrine bars its consideration in the district court. To the extent that her complaint states only a facial challenge to the Rules, or a declaration with respect to past disciplinary actions involving other attorneys, Mosby lacks

standing because she has failed to allege an Article III case or controversy.

Id. at 934.

The Rooker-Feldman doctrine clearly applies in this case. The Committee's placement of Plaintiff on interim suspension was fundamentally judicial in nature— it required the Committee to apply the existing rules (Rules 1.2, 1.3, 1.4, and 8.4 of Arkansas Rules of Professional Conduct as adopted by the Arkansas Supreme Court) to an existing factual record and to determine whether or not those facts constituted a violation of the rules. There is no question that the Committee is but an extension of the judicial branch of Arkansas' government.  ARK. CONST. amend. 28. See also Neal v. Wilson, 316 Ark. 588, 873 S.W.2d 552 (1994). The Arkansas Supreme Court adopted the Model Rules of Professional Conduct, promulgated the Committee's Rules of Procedure, and appoints all of the Committee's members.  See In the Matter of the Arkansas Bar Association:   Petition for the Adoption of Model Rules of Professional Conduct, 287 Ark. Appx. 495, 702 S.W.2d 326 (1985) (per curiam) (adopting rules of professional conduct); In Re Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, 331 Ark. Appx. 537, 963 S.W.2d 562 (1998) (per curiam) (approval and adoption of the revised "Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law").   Furthermore, the Committee's decisions are subject to review by the Arkansas Supreme Court. Arkansas Procedures, Section 12. Thus, based on the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction on Plaintiff's claims.

**V.     Plaintiff's Complaint Is Barred By The Doctrines Of Abstention.**

**a.     Younger Abstention**

Plaintiff's Complaint is also barred by the principles of abstention set forth by the United States Supreme Court in Younger v. Harris and subsequent cases, by the abstention doctrine enunciated in the Colorado River case and its progeny, and by the Pullman abstention doctrine.[10] This doctrine embodies principles of "equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." Mitchum v. Foster, 407 U.S. 225, 243 (1972). Under Younger v. Harris, a federal court is forbidden from granting relief against a pending state civil proceeding that implicates important state interests. Alleghany Corporation v. Pomeroy, 898 F.2d 1314, 1316 (8th Cir. 1990) (district court's refusal to abstain under Younger reversed where plaintiff brought claims in federal court instead of in state proceedings).

While Younger itself involved pending criminal proceedings, the Younger doctrine was subsequently extended to also apply when there is a pending state civil or administrative proceeding that implicates important state interests. See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 627 (1986); Alleghany Corp. v. Pomeroy, 898 F.2d 1314, 1316 (8th Cir. 1990); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, supra, 457 U.S. 423,

---

[10] Courts previously have dismissed claims under the Younger abstention doctrine where Arkansas attorneys raised due process challenges against the Arkansas Supreme Court Committee on Professional Conduct in relation to disbarment and suspension proceedings. See Plouffe v. Ligon, 606 F.3d 890, 893–94 (8th Cir. 2010); McCullough v. Ligon, Case No. 4:05-CV-693 (E.D.Ark), DE 35 filed Dec. 23, 2005.

432 (federal courts should abstain under <u>Younger</u> from interfering with ongoing state attorney disciplinary proceedings); <u>Partin v. Arkansas State Bd. of Law Exam'rs</u>, 863 F.Supp. 924, 926 (E.D. Ark. 1994), <u>aff'd</u> 56 F.3d 69 (8th Cir. 1995)); <u>Pincham v. Illinois Judicial Inquiry Bd.</u>, 681 F.Supp. 1309 (N.D. Ill. 1988) (applying <u>Younger</u> to federal civil rights claim brought by a state court judge).

The application of <u>Younger</u> to this case is compelled by <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, <u>supra</u>, where the plaintiff brought a federal lawsuit challenging the constitutionality of disciplinary rules that a state's Ethics Committee had charged the plaintiff with violating. <u>See Middlesex</u>, 457 U.S. at 428-29. In <u>Middlesex</u>, the Supreme Court found that the district court was correct is dismissing the plaintiff's case based upon <u>Younger</u> and its progeny. <u>Id.</u> at 425. The Court stated that "[t]he State's interest in the professional conduct of attorneys involved in the administration of criminal justice is of special importance. The importance of the state interest in the pending state judicial proceedings and in the federal case calls <u>Younger</u> abstention into play." <u>Id.</u> at 434-35.

Further, in <u>Plouffe v. Ligon</u>, 606 F.3d 890, 893–94 (8th Cir. 2010), under similar allegations, the Eighth Circuit affirmed this Court's finding that <u>Younger</u> compelled dismissal of a plaintiff's federal lawsuit to enjoin ongoing state disciplinary proceedings. With regard to the second and third elements of the <u>Younger</u> analysis, the Court found that: state disciplinary proceedings implicate important state interests, and that the plaintiff's constitutional claims could be

raised in the disciplinary proceeding. *Id*. ("We can find nothing in the rules governing the attorney disciplinary proceedings that would prevent [plaintiff] from raising his constitutional claims. Furthermore, we have previously found that the Arkansas Supreme Court adequately considers constitutional claims raised during attorney disciplinary proceedings") (internal citations omitted).

In the present case, state proceedings concerning the Plaintiff are ongoing. (*See* Supreme Court of Arkansas, D-16-301). The trial of the underlying disbarment matter began on April 30, 2018, but was continued after the filing of this lawsuit that same day.  The disbarment trial resumed on May 14, 2018, but again was continued upon Plaintiff's filing of a Notice of Removal (18-CV-325) of the disbarment action to federal court on the morning of May 15, 2018. The parties await the federal court's ruling on a pending Motion to Remand, and under these circumstances, the state proceeding is ongoing for purposes of <u>Younger</u> abstention. See <u>Alleghany</u>, <u>supra</u>. In <u>Alleghany</u>, the Eighth Circuit Court of Appeals found that:

> In <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975), "the Supreme Court held that the district court should have abstained under <u>Younger</u> even though [the plaintiff] had chosen to initiate an action in federal court rather than appeal to a state court. The court concluded that 'a necessary concomitant of <u>Younger</u> is that a party . . . must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in <u>Younger</u>.' Since <u>Huffman</u>, courts have consistently held that a party cannot avoid <u>Younger</u> by choosing not to pursue available state appellate remedies. <u>Id.</u> at 1143-44 (internal citations omitted) <u>(</u>citing to the United States Supreme Court's decision in <u>Pennzoil Co. v. Texaco</u>, 481 U.S. 1, 16-17 (1987); <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975)).

The Committee's proceeding involving Plaintiff implicates the State of

Arkansas' important interest in maintaining the integrity of its legal community and ensuring that its attorneys conform to appropriate standards of professional conduct. Furthermore, Plaintiff has the opportunity to raise any and all constitutional arguments or claims before the Committee itself, and likewise has the opportunity to fully raise any and all of her constitutional claims on appeal to the Arkansas Supreme Court. Neal v. Wilson, 316 Ark. 588, 873 S.W.2d 552 (1994) (finding that because disbarred attorney had the opportunity to raise his federal claims during the state proceedings, Younger abstention was appropriate). Thus, because Plaintiff's claims involve ongoing state proceedings that implicate important state interests, and because Plaintiff has an available state-court forum to present her constitutional claims, all of the requisites for Younger abstention are satisfied.

      **b.**    **Colorado River Abstention**

Similarly, dismissal of the present action is also appropriate under the abstention principles enunciated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). There, the Supreme Court held that federal courts could abstain from exercising federal jurisdiction when a parallel state action is pending. Colorado River-type abstention is justified to conserve judicial resources and preserve a single comprehensive disposition of the litigation. Id. at 817-19. See Wolfson v. Mutual Benefit Life Insurance Company, 51 F.3d 141(8th Cir. 1995) (abstention appropriate where claims were subject of pending state proceeding); United States Fidelity and Guaranty Company v. Murphy Oil USA, Inc., 21 F.3d

259 (8th Cir. 1994) (abstention appropriate where claims were subject of pending state proceeding). Here, a *Petition for Disbarment* currently is pending against her in the Arkansas Supreme Court, another forum in which she can raise her constitutional claims.

### c.   **Pullman** **Abstention**

Even if abstention were not appropriate under <u>Younger</u> or <u>Colorado River</u>, the Court should nonetheless abstain because this case involves federal issues that might be impacted or rendered unnecessary by "a controlling decision of a state court." See <u>Railroad Comm'n of Texas v. Pullman, Co.</u>, 312 U.S. 496, 500 (1941). Under the <u>Pullman</u> abstention doctrine, a federal court should abstain from ruling in a case that presents federal constitutional issues that might be mooted or presented in a different posture by a state court determination of pertinent state law. By abstaining from a case that involves unanswered questions of state law or a state's construction of its laws and regulations, federal courts recognize the vital interests underlying the preservation of the doctrines on comity and federalism. <u>See</u> <u>Alleghany Corp. v. McCartney</u>, <u>supra</u>. <u>Pullman</u> abstention has been consistently applied in a variety of contexts, including cases involving claimed violations of civil rights. <u>See Babbitt v. United Farm Workers Nat'l</u> <u>Union</u>, 442 U.S. 289 (1979) (holding in part that the federal court should have abstained from adjudicating unresolved questions of state law).

Certain factors must be addressed when a federal court is presented with a case that involves <u>Pullman</u>-type abstention. In a 1998 case, the Eighth Circuit

Court of Appeals reiterated the proper <u>Pullman</u> analysis:

> <u>Pullman</u> abstention requires consideration of (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations. <u>Beavers v. Arkansas State Bd. of Dental Exam'rs</u>, 151 F.3d 838, 841 (8th Cir. 1998) (citing <u>George v. Parratt</u>, 602 F.2d 818, 820-22 (8th Cir. 1979)).

Putting the <u>Pullman</u>-doctrine into context, the Supreme Court stated:

> The paradigm case for abstention arises when the challenged state statute is susceptible of a construction by the state courts that would avoid or modify the [federal] constitutional question. . . . More fully, we have explained: Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. <u>Beavers</u>, 151 F.3d at 841 (internal quotes omitted) (quoting <u>Lake Carriers' Assoc. v.</u> <u>MacMullan</u>, 406 U.S. 498, 510-11 (1972)).

In <u>Beavers</u>, the Eighth Circuit Court of Appeals affirmed a district court's decision to abstain from a suit that presented First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 challenges to certain rules and regulations promulgated by the Arkansas State Board of Dental Examiners. Appellant claimed that the State Board's rules and regulations were facially overbroad and restricted his free speech. The district court based its decision to abstain on the fact that "Arkansas state courts could rule on state statutory grounds and avoid the First Amendment question entirely." <u>Beavers</u>, 151 F.3d at 840. The Eighth Circuit found that the district court had not abused its discretion in deciding to abstain and that

the district court was correct in its determination that the federal constitutional questions could be avoided and that Beavers had an adequate state remedy. Id. at 841.

When viewed in light of the factors articulated in Beavers, Pullman-type abstention should be applied in this case in recognition of the crucial concerns of comity and federalism. This federal action is based upon a question of state law involving the interpretation and application of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law.     In view of the first Pullman factor, the Court must address the effect abstention may have on the right and the necessary remedy. Plaintiff's allegations include the argument that the Rules of Professional Conduct are unconstitutional because they fail to provide procedural due process and because of alleged conflicts of interest created by the hierarchical structure between the Supreme Court of Arkansas and the Executive Director of the Committee. Thus, before the constitutional issues can be addressed, the state law question must be answered. The application and interpretation of the Rules of Professional Conduct are questions of state law; Plaintiff had the opportunity to make her arguments and can present those arguments to the special judge appointed by the Arkansas Supreme Court in connection with his disbarment proceedings. Finally, Plaintiff can present any of her arguments directly to the Arkansas Supreme Court. A ruling as to the application and interpretation of the Rules may, in fact, moot all of Plaintiff's constitutional arguments.

In regard to the second factor, Plaintiff clearly has an adequate state remedy. The Procedures of the Committee provide that in an action for disbarment, which is to be filed as an original action with the Clerk of the Supreme Court, the Court shall assign a special judge to preside over the disbarment proceedings. See Section 13 of the Arkansas Procedures. During the disbarment proceedings, the plaintiff may present any and all arguments including the constitutional challenges made in the present suit. In the event of a finding of misconduct, the judge then hears all evidence relevant to an appropriate sanction to be imposed. Id. The special judge then makes findings of fact and conclusions of law and makes a recommendation as to the appropriate sanction. Id. Thereafter, the parties file briefs as in other cases, in which the plaintiff can raise her constitutional challenges.  See Plouffe v. Ligon, supra; see also Wilson v. Neal, 332 Ark. 148, 964 S.W.2d 199 (1998). Furthermore, if Plaintiff is dissatisfied with the Arkansas Supreme Court's decision, she may apply directly to the United States Supreme Court for certiorari.

The third factor looks at the clarity of the state law in question. In her Complaint, Plaintiff alleges that the Defendants' actions deprived her of due process and equal protection rights, among others. Even if Plaintiff's allegations were true, the Rules of Professional Conduct should be interpreted by the state courts to ascertain their meaning and to determine whether the actions or inactions of Defendants were outside the scope of the authority provided currently by the Rules. Although the initial interpretation and application of the Rules is the duty and responsibility of the Committee, the Arkansas Supreme Court reviews the

Committee's decisions, if appealed, including addressing any and all state and federal constitutional issues. Furthermore, the Arkansas Supreme Court is the body that has adopted the Arkansas Rules of Professional Conduct and further adopted the Arkansas Procedures. Consequently, the Arkansas Supreme Court is entitled to review the interpretation and application of the Arkansas Procedures. The Committee and the Arkansas Supreme Court should be given the opportunity to address the interpretation and application of these Rules, important issues of state law, and, if needed, to address the constitutional issues that Plaintiff has raised. See Plouffe, supra ("we have previously found that the Arkansas Supreme Court adequately considers constitutional claims raised during attorney disciplinary proceedings").

The last factor, and arguably the most important in regards to abstention, is whether abstention will avoid federal interference with state operations. It is clear that a state action is currently pending and that Plaintiff can seek review of the findings and recommendations of the special judge and then before the Arkansas Supreme Court. During the disbarment proceedings, Plaintiff may raise any and all arguments, including constitutional arguments, if she desires. Furthermore, if Plaintiff is dissatisfied with a ruling from the Arkansas Supreme Court, she can file a petition for writ of certiorari in the United States Supreme Court. See Rule 19 of the Rules of the Supreme Court of the United States.  Accordingly, this Court should abstain pursuant to the Younger, Colorado River, and Pullman abstention doctrines.

**VI.    Plaintiff's Constitutional Claims for Prospective Injunctive Relief Should Be Dismissed for Lack of Article III Standing**

As set forth above, to the extent Plaintiff alleges constitutional claims attacking the Arkansas Procedures both facially and as applied, such claims are barred for lack of federal jurisdiction under the Rooker-Feldman doctrine and Younger, Colorado River, and Pullman abstention doctrines.

Plaintiff also lacks standing to bring her constitutional claims seeking prospective injunctive relief.   (Complaint ¶ 86). Article III of the United States Constitution confines the jurisdiction of federal courts to justiciable cases and controversies. U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Such cases and controversies include only those claims that allege some "injury in fact" redressable by a favorable judgment. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004). To satisfy this "injury in fact" requirement, a plaintiff seeking prospective relief against future conduct of defendants who caused injury in the past must show that she faces "a real and immediate threat that she would again suffer similar injury in the future." Park v. Forest Serv. of the United States, 205 F.3d 1034, 1037 (8th Cir.2000) (internal quotations and brackets omitted); see O'Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). In addition to satisfying Article III standing requirements, litigants must stay within "prudential limitations" on the exercise of federal-court jurisdiction. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). One such limitation is a rule that parties "generally must assert [their] own legal rights and interests,

and cannot rest [their] claim to relief on the legal rights or interests of third parties." Id. at 499, 95 S.Ct. 2197.

In Mosby, supra, the Court held that the Plaintiff lacked standing to seek prospective injunctive relief against future actions of the Committee because her complaint did not sufficiently allege a "real and immediate threat of repeated injury." Id. at 933.  The Court found:

> The record here does not demonstrate that Mosby is likely to suffer from alleged discrimination by Ligon or the Justices of the Arkansas Supreme Court in the future. Her only likely opportunity for interactions with Ligon or the Committee in the future would be in the case of another alleged violation of the Rules. We deem apropos the Supreme Court's observation in O'Shea, that "attempting to anticipate whether and when respondents will be charged with crime ... takes us into the area of speculation and conjecture," 414 U.S. at 497, 94 S.Ct. 669, because we have the same inability to foresee whether Mosby will face future disciplinary proceedings. The speculative nature of making this prediction leads us to conclude that the record does not establish a real or immediate threat of repeated injury. Mosby thus lacks standing to pursue the injunctive relief that she seeks.

Id. at 933-34.

Similarly, the Plaintiff here does not demonstrate the likelihood of alleged future discrimination by the Defendants. In fact, because Plaintiff faces disbarment (whereas the Plaintiff in Mosby received only a written caution and fine), the likelihood of future injury to her is practically non-existent.[11] With regard to alleged harm to third parties, Plaintiff alleges that "there is a threat of real and immediate harm that defendants will violate other state licensed attorneys prior to affording a

---

[11]  In paragraph 85 of the Complaint, Plaintiff asserts that "Attorney Bloodman is in immediate danger and harm of disbarment." To be clear, the Complaint seeks injunctive relief ONLY as to the interim suspension of her attorney license; not against the ongoing disbarment proceeding.

hearing." (Complaint ¶ 85).  Plaintiff fails to allege, however, that such speculative

discipline imposed on other attorneys would cause herself to suffer an injury-in-fact

that would satisfy the Article III standing requirement. See Mosby, 418 F.3d at 934.

("Mosby attempts to 'rest [her] claim to relief on the legal rights or interests of third

parties,' and we conclude that she cannot overcome the prudential limitation on the

exercise of federal jurisdiction. Mosby plainly does not fit within the limited

exception to the prudential proscription against asserting the rights of third parties,

for she presents no evidence of a 'close' relationship with these attorneys or a

'hindrance' to the attorneys' ability to protect their own interests"). (internal

citations omitted).

Consequently, Plaintiff lacks standing to pursue prospective injunctive relief

and such claims should be dismissed.

## VII.   Plaintiff's Fails To State a Claim that Due Process Rights under the Fifth and Fourteenth Amendments Were Violated and Such Claim Must Be Dismissed

The primary contention of Plaintiff's Complaint is that the Defendants and

the Arkansas Procedures denied her due process by failing to provide a pre-

suspension hearing. (Complaint ¶¶ 92-115, 207-220).  Because due process does not

require such a hearing (see discussion in Section III, pp. 10-12, supra), Plaintiff's

Complaint fails to set forth a claim upon which relief can be granted, and Plaintiff's

Complaint should be dismissed.

**VIII.  Plaintiff's Fails To State a Claim that Her Rights to Equal Protection under the Fourteenth Amendment Were Violated and Such Claim Must Be Dismissed**

Should this Court find it has jurisdiction over the Plaintiff's constitutional claims, the Court nevertheless should dismiss such claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff alleges that her right to equal protection under the United States Constitution has been violated because "in that she has been afforded less favorable terms and conditions of her employment as a state licensed attorney on the basis of her race (Complaint ¶¶ 116-195). Equal protection analysis turns on the classification designated in the statute or by the governmental decision being challenged. "To state an equal protection claim, [Plaintiff] must . . . [establish] that he was treated differently from others similarly situated to him. Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998). Plaintiff has failed to provide any factual foundation for her allegation that she was denied equal protection of the law. "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (citing Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir.2010); accord Bills v. Dahm, 32 F.3d 333, 335 (8th Cir.1994) (explaining equal protection comparators must be similarly situated "in all relevant respects")). "A class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a

number of legitimate considerations." <u>Nolan v. Thompson</u>, 521 F.3d 983, 990 (8th Cir.2008) (quoting <u>Jennings v. City of Stillwater</u>, 383 F.3d 1199, 1214 (10th Cir.2004)).

Beyond mere conclusory statements, Plaintiff cites no facts to support the contention that she was treated differently from other attorneys <u>similarly situated</u>. Plaintiff mentions other Arkansas attorneys whom she alleges were treated differently but pleads no facts, beyond a single conclusory statement (Complaint ¶ 193), that any such attorneys were similarly situated to the Plaintiff.  Plaintiff fails to assert any facts which make even a prima facie showing that the she is similarly situated to the comparators with respect to the nature of the alleged disciplinary violations or any other relevant factors. Plaintiff has failed to state an equal protection claim upon which relief can be granted and pursuant to Rule 12(b)(6), Plaintiff's claim should be dismissed.

## VIII.   Plaintiff Fails to State a Claim for Civil Conspiracy under 42 U.S.C. § 1985(3) and Such Claim Must Be Dismissed

In order to prove the existence of a civil rights conspiracy under § 1985(3), a plaintiff must prove that: (1) the defendants did conspire; (2) such conspiracy was for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; (3) one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy; and (4) another person was injured in his person or property or deprived of having and exercising any right or privilege of a

citizen in the United States. Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir.1996) (en banc).

Plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." See Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 685 (8th Cir. 2012) (quoting City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)). Mere speculation or conjecture is insufficient to prove a civil conspiracy. Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999). Under § 1983, a plaintiff must establish that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy. Moody v. Arkansas State Highway & Transp. Dep't, No. 4:12CV00312 JLH, 2013 WL 1367339, at *8 (E.D. Ark. Apr. 4, 2013), aff'd sub nom. Moody v. Vozel, 771 F.3d 1093 (8th Cir. 2014)

It is important to note that because there was no constitutional violation there can be no conspiracy. See Askew v. Millerd, 191 F.3d 953, 957–59 (8th Cir. 1999) ("At the outset, because there was no constitutional violation, this claim necessarily fails"). But even assuming Plaintiff alleged a valid constitutional claim, Plaintiff fails to allege that Defendants reached an agreement or understanding to violate her equal protection rights. Plaintiff merely asserts, in conclusory and speculative terms, that "Defendants conspired among themselves and with others for the purpose of depriving directly or indirectly, Attorney Bloodman of equal protections under the law to prevent [her] from practicing law…" (Complaint ¶ 197).

Plaintiff fails to allege any facts sufficient to satisfy set forth a *prima facie* case of civil conspiracy and such claim therefore should be dismissed.

## CONCLUSION

From the face of Plaintiff's Complaint, it is clear she cannot prove any set of facts entitling her to relief in this case. For all the reasons set forth herein, Plaintiff's Complaint should be dismissed.

WHEREFORE, Defendants respectfully request that the Court grant their Motion to Dismiss and for any and all other relief to which they are entitled.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By:     */s/ William C. Bird III*
William C. Bird III
Ark Bar No. 2005149
Assistant Attorney General
Ark. Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone:  (501) 682-1317
Fax: (501) 682-2591
william.bird@arkansasAG.gov

Monty V. Baugh
Ark. Bar No. 2008138
Deputy Attorney General
Ark. Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone:  (501) 682-1681
Fax: (501) 682-2591
monty.vaugh@arkansasAG.gov

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, William C. Bird III, Assistant Attorney General, hereby certify that on May 29, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*<u>/s/ William C. Bird III</u>*