**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**TERESA BLOODMAN**                                                            **PLAINTIFF**

**v.**                                      **Case No. 4:18-cv-00282-KGB**

**ARKANSAS SUPREME
COURT COMMITTEE ON
PROFESSIONAL CONDUCT,** *et al.*                              **DEFENDANTS**

**ORDER**

Plaintiff Teresa Bloodman, an African American woman licensed to practice law in Arkansas, has sued the Arkansas Supreme Court Committee on Professional Conduct ("Committee") through James Dunham, the current Committee Chair, in his official and individual capacity; the members of Panel A of the Committee in their official and individual capacities; Robert Stark Ligon, the Executive Director of the Committee, in his official and individual capacity; the Justices of the Arkansas Supreme Court in their official and individual capacities; and Kim Smith, a Special Judge appointed by the Arkansas Supreme Court to hear special matters, in his official and individual capacity (Dkt. No. 1). Before the Court is defendants' motion to dismiss (Dkt. No. 3). Ms. Bloodman filed a motion for extension of time and later responded in opposition (Dkt. Nos. 5, 8). The Court grants Ms. Bloodman's motion for extension of time and has considered the response as timely when evaluating the motion to dismiss (Dkt. No. 5). For the following reasons, the Court grants the motion to dismiss (Dkt. No. 3).

**I.**      **Background**

The following facts are taken from Ms. Bloodman's complaint and the documents attached to it (Dkt. No. 3). Ms. Bloodman is an African-American person licensed to practice law in 2005 (*Id.*, ¶ 6). The defendant Committee was formed by the Arkansas Supreme Court "for the

regulation of the professional conduct of attorneys in Arkansas." (*Id*., ¶ 7). The Committee's Chair, Mr. Dunham, is also a defendant.

Separate defendant Mr. Ligon is the Executive Director of the Committee (*Id*., ¶ 8). Separate defendants Michael Boyd, T. Benton Smith, Tonya Patrick, Lisa Ballard, Karolyn Jones, Mark Martin, Danyelle Walker, and Tanya Owen are members of "Panel A" of the Committee (*Id*., ¶ 10). Chief Justice John Kemp, Justice Robin Wynne, Justice Courtney Hudson Goodson, Justice Josephine Hart, Justice Shawn Womack, Justice Karen Baker, and Justice Rhonda Wood are named as defendants (*Id*., ¶ 9). Separate defendant Kim Smith is a Special Judge appointed by the Arkansas Supreme Court (*Id*., ¶ 11).

The Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law (the "Procedures") regulate "the professional conduct of attorneys at law and shall apply to complaints filed and formal complaints instituted against attorneys . . . ." Ark. R. Prof. Cond. § 1(A). Under the Procedures, on March 18, 2016, the Committee met and imposed an "interim suspension" of Ms. Bloodman's law license and issued a "Findings and Order" recommending that Mr. Ligon institute disbarment proceedings (*Id*., ¶ 28). Ms. Bloodman attaches a copy of the Findings and Order to her complaint (Dkt. No. 1, at 39, 41). The Findings and Order states that, on March 18, "Panel A voted unanimously to refer Respondent Bloodman to disbarment proceedings pursuant to the Procedures, Section 10(E)(4) and Section 13, and directed the Executive Director to file a Petition for Disbarment if Ms. Bloodman does not timely surrender her Arkansas law license upon being notified of the Panel's action." (*Id*., at 39). Panel A's decision was based upon nine of ten cases brought against Ms. Bloodman (*Id*.). The Findings and Order also states that "[a]n order of interim suspension shall issue with the disbarment referral, pursuant to the Procedures, Section 16(A)(1)." (*Id*.). The Findings and Order further notes that "[t]he

Supplemental Affidavit of Respondent filed March 4, 2016, in four cases, along with the response by the Office of Professional Conduct, was considered." (*Id*., at 41). On March 22, 2016, an "Order of Interim Suspension" was entered, immediately suspending Ms. Bloodman's law license (*Id*., at 40).

Ms. Bloodman alleges that, on March 24, 2016, and again on April 1, 2016, she filed an affidavit in rebuttal of the evidence and exceptions to the Findings and Order, challenging the correctness of the Findings and Order, the sufficiency of the evidence, and the alleged denial of her due process (*Id*., at 11). Ms. Bloodman further alleges that she filed a motion to set aside the interim order of suspension and a request for the dissolution of the interim suspension, both of which were denied on April 8, 2016 (*Id*.). According to Ms. Bloodman, Mr. Ligon asked the United States District Court for the Eastern District of Arkansas to impose identical discipline on Ms. Bloodman (*Id*.).[1]

On May 17, 2016, Ms. Bloodman filed a "petition for a writ of certiorari to lodge the record and in the alternative petition for writ of mandamus." Petition for Writ of Certiorari, *Bloodman v. Ligon*, CV-16-434 (Ark. May 17, 2016).[2] Justice Wood and Justice Wynne recused from this action and were replaced by special justices. Recusal, *Bloodman v. Ligon*, CV-16-434 (Ark. May

---

[1] Ms. Bloodman misidentifies "Judge Karen Baker" as having issued Show Cause orders in cases pending in federal court (Dkt. No. 1, ¶¶ 37-38). Those orders were issued by the undersigned. The procedure for disciplinary enforcement of attorneys admitted to practice before the United States District Court for the Eastern District of Arkansas is set out in the Appendix to the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas* in the *Model Federal Rules of Disciplinary Enforcement*. The Court does not understand Ms. Bloodman to be challenging application of the federal rules to her.

[2] On a motion to dismiss, "[t]he court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *In re K-tel Int'l Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002) (internal quotation marks and citation omitted).

18, 2016). On September 15, 2016, the Arkansas Supreme Court entered a per curiam order remanding to the Committee with instructions to enter a new order with an analysis from *Tapp v. Ligon*, 428 S.W.3d 492 (Ark. 2013). Per Curiam Order, *Bloodman v. Ligon*, CV-16-434 (Ark. Sept. 15, 2016). On September 26, 2016, Ms. Bloodman filed a motion for reconsideration. Motion for Reconsideration, *Bloodman v. Ligon*, CV-16-434 (Ark. Sept. 26, 2016). On September 30, 2016, Ms. Bloodman filed a petition for writ of mandamus with the Arkansas Supreme Court. Petition for Writ of Mandamus, *Bloodman v. Ligon*, CV-16-434 (Ark. Sept. 30, 2016). On October 4, 2016, a revised Findings and Order from the Committee was filed with the Clerk of the Supreme Court. Revised Findings and Order on Remand, *Bloodman v. Ligon*, CV-16-434 (Ark. Oct. 4, 2016). Ms. Bloodman then filed a response to the revised Findings and Order. Petitioner's Response to Revised Findings and Order on Remand, *Bloodman v. Ligon*, CV-16-434 (Ark. Oct. 24, 2016). On October 27, 2016, the Arkansas Supreme Court denied various motions and petitions filed by Ms. Bloodman, including: (1) her motion for reconsideration; (2) her petition for writ of mandamus; (3) her petition for writ of certiorari; (4) her expedited motion for stay of interim suspension; and (5) her petition for writ of certiorari to lodge the record. Formal Orders, *Bloodman v. Ligon*, CV-16-434 (Ark. Oct. 27, 2016).

Ms. Bloodman then filed a motion for reconsideration and petition for rehearing with the Arkansas Supreme Court. Motion for Reconsideration and Petition for Rehearing, *Bloodman v. Ligon*, CV-16-434 (Ark. Nov. 14, 2016). The Arkansas Supreme Court denied both motions. Formal Orders, *Bloodman v. Ligon*, CV-16-434 (Ark. Dec. 8, 2016). Following the denials of those motions, Ms. Bloodman filed a petition for writ of certiorari with the United States Supreme Court, which was denied. *See Bloodman v. Ligon*, CV-16-434 (Ark. 2016), *petition for cert. denied*, 85 U.S.L.W. 3578 (U.S. June 12, 2017) (No. 16-9036).

**II.     Standard Of Review**

Defendants move to dismiss the claims against them alleging that Ms. Bloodman's claims run afoul of Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction to hear the case. A court has broad authority to decide its own right to hear a case, and it can consider matters outside of the pleadings when deciding a "factual attack" under Rule 12(b)(1). *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990); *see Ozark Society v. Melcher*, 229 F. Supp. 2d 896, 902 (E.D. Ark. 2002) (explaining that a "factual attack" challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings). Further, when the defendant makes a "factual attack," it is the plaintiff's burden to establish that jurisdiction exists, and "no presumptive truthfulness attaches to the plaintiff's allegations." *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In other words, the non-moving party does not have the benefit of Rule 12(b)(6) safeguards in a factual attack. *Id.* at 729 n.6.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

(alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Roe v. Nebraska*, 861 F.3d 785, 788 (8th Cir. 2017). A reviewing court "may consider these materials without converting the defendant's request to a motion for summary judgment." *Roe*, 861 F.3d at 788 (citations and quotation marks omitted); *see Lustgraaf v. Behrens*, 619 F.3d 867, 885-86 (8th Cir. 2010) ("[W]hen considering a motion to dismiss . . . , [a court] may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents . . . .") (alterations in original) (emphasis omitted).

**III.    Discussion**

In her complaint, Ms. Bloodman alleges five claims against defendants: (1) pursuant to 42 U.S.C. § 1983, Ms. Bloodman claims that Section 16 and 17 of the Procedures violated the Fifth and Fourteenth Amendments of the United States Constitution by denying her procedural due process; (2) pursuant to 42 U.S.C. § 1983, Ms. Bloodman asserts that defendants violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by treating her less favorably due to her race; (3) pursuant to 42 U.S.C. § 1985, Ms. Bloodman asserts that defendants conspired among themselves to deprive her of her equal protection rights; (4) pursuant to 42 U.S.C. § 1983, Ms. Bloodman alleges that Section 16 of the Procedures violates the

Fourteenth Amendment of the United States Constitution; and (5) that the Procedures are constitutionally infirm because the Arkansas Supreme Court employed Mr. Ligon and appoints the members of the Committee.

For relief, Ms. Bloodman seeks the following: (1) a permanent injunction against defendants and their agents from "giving effect to the Order of interim suspension . . . which denies" her the right to practice law in Arkansas; (2) a declaration that Sections 16 and 17 of the Procedures are unconstitutional; (3) a declaration that the interim suspension order is invalid; (4) a declaration that the interim suspension order violates the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution; (5) a declaration that the interim suspension order violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (6) a permanent injunction against defendants and their agents from enforcing the interim suspension order and "from acting in concert with them"; (7) a permanent injunction against defendants and their agents from enforcing Section 16 of the Procedures; (8) a declaration that the "Procedures and Process [are] unconstitutional"; and (9) a declaration that the "current practice of [Mr.] Ligon, the Committee and Arkansas Supreme Court are unconstitutional." (*Id.*, at 36-37).

In their motion to dismiss, defendants argue that sovereign immunity, judicial immunity, and qualified immunity bar suits against defendants (Dkt. No. 3, at 2). Defendants also argue that the Court lacks subject-matter jurisdiction over Ms. Bloodman's claims under the *Rooker-Feldman* doctrine (*Id.*). Defendants further argue that this Court should abstain from deciding Ms. Bloodman's complaint (*Id.*). Finally, defendants argue that Ms. Bloodman does not have Article III standing to seek prospective injunctive relief and that her complaint fails to state claims under the Fifth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. §

1985 (*Id.*, at 3). The Court addresses only those arguments necessary to resolve the pending motion to dismiss in relation to each of Ms. Bloodman's claims against each defendant in his or her official and individual capacities.

### A.     Sovereign Immunity

Ms. Bloodman filed suit against each defendant in his or her official and individual capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996). Section 1983 claims against the State of Arkansas and its agencies are barred by the Eleventh Amendment. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)). However, when a state official is sued for injunctive relief, he or she "would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the state.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 159-60 (1908). Suits for declaratory relief avoid Eleventh Amendment immunity "if the official has some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (citing *Ex parte Young*, 209 U.S. at 157).

Defendants concede that "all named Defendants are, by law, agencies and officials of the State of Arkansas." (Dkt. No. 4, at 8). Ms. Bloodman's complaint only alleges claims for injunctive and declaratory relief. Accordingly, the individual defendants are subject to suit on claims for injunctive and declaratory relief in their official capacities. *Ex parte Young*, 209 U.S.

at 157. To the extent Ms. Bloodman names the Committee itself as a defendant and to the extent the Committee itself is a state agency, those claims are barred by sovereign immunity. *See Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007) (determining that under *Ex parte Young* state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, but the same doctrine does not extend to states or state agencies). The Eleventh Amendment does not bar Ms. Bloodman's claims against the individual defendants for injunctive and declaratory relief in their official capacities.

### B. *Rooker-Feldman* Doctrine

Defendants further argue that the Court lacks subject-matter jurisdiction over Ms. Bloodman's claims under the *Rooker-Feldman* doctrine (Dkt. No. 4, at 13). The *Rooker-Feldman* doctrine provides that federal courts, except for the Supreme Court, cannot directly review state court decisions. In *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280 (2005), the Supreme Court confined the doctrine's application to the factual setting presented in the two cases that gave the doctrine its name: when the losing parties in a state court case bring a federal suit alleging that the state court ruling was unconstitutional. *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The Eighth Circuit Court of Appeals considered a case similar to Ms. Bloodman's case in *Mosby v. Ligon*, 418 F.3d 927 (8th Cir. 2005), and affirmed a district court's decision to dismiss plaintiff Lori Mosby's complaint based upon the *Rooker-Feldman* doctrine. There, as relevant, Ms. Mosby sought a declaratory judgment that the Arkansas Model Rules of Professional Conduct were applied to her by the Committee in a discriminatory manner in violation of the United States Constitution. 418 F.3d at 932. The Eighth Circuit held that "the Committee's decision to discipline Mosby is the functional equivalent of a state-court judgment." *Id*. (citing *Thomas v.*

9

*Kadish*, 748 F.2d 276, 281-82 (5th Cir. 1984); *Muhammed v. Ark. Supreme Court Comm. on Prof'l Conduct*, 655 F. Supp. 584, 586 (E.D. Ark. 1986)). The Eighth Circuit further determined that the only reason Ms. Mosby sought the declaration was to overturn the discipline imposed by the Committee and therefore concluded that portion of Ms. Mosby's complaint was barred by the *Rooker-Feldman* doctrine. *Id*. The Eighth Circuit also noted that it was irrelevant that Ms. Mosby did not raise the constitutional issue before the Committee or the Arkansas Supreme Court, as Ms. Mosby could have done so but did not. *Id*. The Eighth Circuit concluded that, to the extent Ms. Mosby sought to overturn the Committee's decision to discipline her, those claims were barred by the *Rooker-Feldman* doctrine. *Id*.

This Court concludes that at least a portion of Ms. Bloodman's complaint is a challenge to the Committee's disciplinary action against her, seeks to undo the Committee's disciplinary action against her, and, therefore, is barred by the *Rooker-Feldman* doctrine. This doctrine applies to bar certain claims, regardless of whether those claims are asserted against defendants in their official or individual capacities.

In her first claim, Ms. Bloodman alleges that "Sections 16 and 17 of the Procedures are facially invalid . . . ." (Dkt. No. 1, at 20). Also in her first claim, she alleges that the "Justices of the Arkansas Supreme Court[']s refusal to set aside the invalid O[r]der of interim suspension . . . is contrary to a constitutional right." (*Id*., at 23). For relief on this claim, she seeks (1) a declaration that Sections 16 and 17 of the Procedures are unconstitutional; (2) an injunction against her interim suspension order; and (3) a declaration that the interim suspension order is unconstitutional (*Id*., at 36). Except for her request that the Court issue a declaration that Sections 16 and 17 of the Procedures are unconstitutional, Ms. Bloodman essentially asks in connection with her first claim that the Court to overturn her interim suspension. Therefore, except to the extent Ms. Bloodman's

first claim seeks a declaration that Sections 16 and 17 are facially unconstitutional, the first claim "seek[s] to undo the Committee's decision" to impose an interim suspension order, is barred by the *Rooker-Feldman* doctrine, and is dismissed with prejudice.

The Court also concludes that Ms. Bloodman's second and third claims are barred under the *Rooker-Feldman* doctrine. Ms. Bloodman's second and third claims allege that the Procedures denied her equal protection under the United States Constitution and that her interim suspension is the result of a conspiracy between defendants (Dkt. No. 1, at 23-32). As relief on those claims, Ms. Bloodman seeks an injunction against her interim suspension and a declaration that the interim suspension order violates the equal protection clause of the United States Constitution (*Id*., at 36). The Court concludes that Ms. Bloodman's second and third claims "seek to undo the Committee's decision" in Ms. Bloodman's case, "for the only practical reason to seek a declaration that the [interim suspension order] was meted out in violation of the Fourteenth Amendment would be to set aside the sanction." *Mosby*, 418 F.3d at 932. Accordingly, the Court dismisses with prejudice Ms. Bloodman's second and third causes of action.

Finally, the Court also concludes that Ms. Bloodman's fifth claim is barred under the *Rooker-Feldman* doctrine to the extent Ms. Bloodman claims that the disciplinary action against her was the result of improper contact between Mr. Ligon and Justices of the Arkansas Supreme Court. In this claim, Ms. Bloodman asserts that "Justice Goodson held ex-parte communication with defendant Ligon while Attorney Bloodman's Petition for Writ was pending before the Arkansas Supreme Court." (Dkt. No. 1, at 35). She also asserts that "[t]he procedure is constitutionally invalid for the aforementioned relationship that exists between the [J]ustices and defendant Ligon as his superiors." (*Id*.). For relief on this claim, Ms. Bloodman seeks a declaration that "the current practice of [] Ligon, the Committee and Arkansas Supreme Court [is]

11

unconstitutional." (*Id*., at 37). Construing this request for relief liberally, the Court concludes that Ms. Bloodman's fifth claim seeks, in part, to undo the Committee's decision in Ms. Bloodman's disciplinary case. *Mosby*, 418 F.3d at 932. Accordingly, the Court dismisses with prejudice Ms. Bloodman's fifth cause of action to the extent it seeks to undo the Committee's decision to impose an interim suspension order against her.

### C. Claims For Prospective Declaratory Relief

Ms. Bloodman's claims that remain, after the Court analyzes and applies the *Rooker-Feldman* doctrine, are claims seeking declaratory relief, essentially the claims in which Ms. Bloodman raises arguments that certain Procedures and practices are facially unconstitutional. The Eighth Circuit has determined "that the *Rooker-Feldman* doctrine does not bar the district court from exercising jurisdiction over general challenges to the constitutionality of a State's disciplinary rules and processes." *Mosby*, 418 F.3d at 932. In her first claim, Ms. Bloodman seeks a declaration that Sections 16 and 17 of the Procedures are facially unconstitutional. In her fourth claim, she seeks a declaration that the Procedures and processes are unconstitutional, and in her fifth claim, she seeks a declaration that the current practice of Mr. Ligon, the Committee, and the Arkansas Supreme Court is unconstitutional.

#### 1. Standing

To maintain these facial constitutional challenges, Ms. Bloodman must demonstrate Article III standing under the United States Constitution. *Mosby*, 418 F.3d at 932-33; *see also* U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Cases and controversies which give rise to Article III standing include only those claims that allege some "injury in fact" redressable by a favorable judgment. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004). To satisfy this "injury in fact" requirement, a plaintiff seeking prospective relief against future

conduct of defendants who caused injury in the past must show that she faces "a real and immediate threat that she would again suffer similar injury in the future." *Mosby*, 418 F.3d at 933 (quoting *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) (internal quotations and brackets omitted)); *see O'Shea v. Littleton,* 414 U.S. 488, 496 (1974). There are also certain "prudential limitations" on standing and the exercise of federal-court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). As relevant here and in *Mosby*, one such limitation is a rule that parties "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Mosby*, 418 F.3d at 933 (quoting *Warth*, 422 U.S. at 499).

Ms. Bloodman, in her complaint, repeatedly cites Section 16, which relates only to the interim suspension procedure (Dkt. No. 1, ¶¶ 25, 94, 96, 97, 101, 209, 211, 212, 213, and 219). Section 17, which Ms. Bloodman also cites, relates to sanctions generally. Ms. Bloodman has the responsibility to allege clearly facts that demonstrate standing. *Mosby*, 418 F.3d at 933 (citing *Warth*, 442 U.S., at 517-18). To the extent Ms. Bloodman's complaint asserts only a facial challenge to the Procedures and practices related to interim suspensions without challenging the Committee's ruling pertaining to her, the Court determines Ms. Bloodman lacks standing to seek prospective declaratory relief against future actions of the Committee and Justices for interim suspension because she does not sufficiently allege a "real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 496. Instead, Ms. Bloodman complains of past events that occurred with respect to her. She alleges no facts that suggest a real and immediate threat of repeated injury with respect to the Procedures and practices related to interim suspension. Ms. Bloodman's Article III standing to bring these claims depends on whether and when Ms. Bloodman will face the threat of a future interim suspension. The Court determines that the "speculative nature of

making this prediction" leads to the conclusion that "the record does not establish a real or immediate threat of repeated injury." *Mosby*, 418 F.3d at 933-34. Ms. Bloodman lacks standing to pursue such prospective declaratory relief.

### 2. *Younger* Abstention

This Court acknowledges that, in her fifth claim, Ms. Bloodman asserts that the Procedures are constitutionally infirm because the Arkansas Supreme Court employed Mr. Ligon and appoints the members of the Committee. To the extent there is any basis to construe any of Ms. Bloodman's claims as a broader challenge to the Procedures overall, not just to the interim suspension procedure, and to the extent Ms. Bloodman has standing to bring such a broader claim for prospective declaratory relief, the Court determines that its consideration of such claims is barred by the principles of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971).

Defendants argue that the state proceedings concerning Ms. Bloodman are currently ongoing, as the trial for the underlying disbarment is still pending (Dkt. No. 4, at 19). Defendants assert that the State of Arkansas has an "important interest in maintaining the integrity of its legal community and ensuring that its attorneys conform to appropriate standards of professional conduct." (*Id.*, at 20). Furthermore, defendants assert that Ms. Bloodman has the opportunity "to raise any and all constitutional arguments or claims before the Committee itself, and likewise has the opportunity to fully raise any and all of her constitutional claims on appeal to the Arkansas Supreme Court." (*Id.*). Ms. Bloodman responds that she has "exhaust[ed] all her options prior to filing a Complaint in federal court" and that the ongoing state proceeding does not give her an opportunity to raise her constitutional claims (Dkt. No. 9, at 23-26).

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that federal courts should abstain from interfering in ongoing state-court proceedings. The Court explained the rationale for such abstention as follows:

> [The concept of federalism] represent[s] . . . a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44.

Accordingly, a federal court should abstain from hearing constitutional claims when: (1) there is an ongoing state proceeding; (2) the state proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceedings to raise the constitutional challenges. *Id.* at 43-45; *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012); *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir. 2010). If these three elements are satisfied, the court should abstain unless it detects "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). These exceptions, though, must be narrowly construed. *Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004). "[I]ntervention by federal courts in ongoing state proceedings requires that the 'circumstances must be extraordinary in the sense of creating an extraordinary pressing need for immediate federal equitable relief . . . .'" *Id.* at 779 (internal citation and quotation omitted).

The Court concludes that—to the extent that Ms. Bloodman asserts a broader challenge to the Procedures overall, that her claims are not barred by the *Rooker-Feldman* doctrine, and that she has standing to maintain such claims—abstention is appropriate as to Ms. Bloodman's remaining claims. Here, the public record indicates that there is an ongoing state proceeding: Ms.

Bloodman's disbarment trial is still pending before Special Judge Kim Smith, a separate defendant in this action. *See Ligon v. Bloodman*, D-16-301 (Ark. Dec. 11, 2018). The United States Supreme Court held that New Jersey considers a state bar disciplinary proceeding to be "judicial in nature" and that "[t]he State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432-33. Courts have concluded that Arkansas attorney discipline and disbarment proceedings are clearly judicial in nature. *Plouffe*, 606 F.3d at 892-93; *Neal v. Wilson*, 920 F. Supp. 976, 988 (E.D. Ark. 1996). Furthermore, nothing in the Procedures prevents Ms. Bloodman from raising her constitutional claims in her disbarment proceedings, and in fact she previously filed a petition for *writ of certiorari* wherein she raised many of her constitutional claims before the Arkansas Supreme Court. *See* Petitioner's Expedited Motion for Stay of Interim Suspension Pending the Outcome of the Petition for Writ of Certiorari, at 2, *Bloodman v. Ligon*, CV-16-434 (Ark. May 23, 2016). Under Section 13(D) of the Procedures, Ms. Bloodman may appeal to the Arkansas Supreme Court, and the "Arkansas Supreme Court has heard and ruled on constitutional challenges presented by attorneys during disciplinary hearings." *Neal*, 920 F. Supp. at 988 (listing cases where the Arkansas Supreme Court has heard constitutional arguments during disciplinary proceedings). Finally, the Court finds no allegation of "bad faith, harassment, or some other circumstances that would make abstention inappropriate." *Middlesex*, 457 U.S. at 435.

Accordingly, to the extent Ms. Bloodman asserts a broader challenge to the Procedures overall, that her claims are not barred by the *Rooker-Feldman* doctrine, and that she has standing to maintain such claims, the Court concludes that those claims fall squarely into the abstention doctrine set forth in *Younger*. Therefore, the Court applies the *Younger* doctrine and dismisses

any and all of Ms. Bloodman's remaining claims.  *Plouffe*, 606 F.3d at 894 (affirming dismissal of the complaint upon application of the *Younger* doctrine).

**IV.     Conclusion**

For the reasons discussed above, per the *Rooker-Feldman* doctrine, the Court dismisses with prejudice Ms. Bloodman's first, second, third, and fifth claims for relief to the extent those claims are as-applied challenges to the Procedures.  As to Ms. Bloodman's remaining claims, the Court determines Ms. Bloodman lacks standing to maintain these claims and that, even if she has standing, the Court should abstain from hearing her remaining claims under the *Younger* abstention doctrine.  For these reasons, the Court grants defendants' motion to dismiss and dismisses this action consistent with the terms of this Order (Dkt. No. 3).  Ms. Bloodman's motion for extension of time is granted (Dkt. No. 5).  The Court denies all other pending motions as moot (Dkt. Nos. 41, 43, 44).

It is so ordered, this the 14th day of March, 2019.

_____
Kristine G. Baker
United States District Judge